UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRANDON KEITH TAYLOR,

                     Plaintiff,

v.

SHIRLEY GODIWALLA, MD,

                     Defendant.

Case No. 24-CV-755-JPS

**ORDER**

Plaintiff Brandon Keith Taylor, an inmate confined at Fox Lake Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendant Shirley Godiwalla, MD ("Godiwalla") violated his constitutional rights by failing to provide him adequate medical treatment. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

**1.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On July 24, 2024, the Court ordered Plaintiff to pay an initial partial filing fee of $51.49. Plaintiff paid that fee on August 9, 2024. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing

fee. ECF No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2. SCREENING THE COMPLAINT

    2.1    Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799

F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

In December 2022, Plaintiff wrote to the Health Service Unit ("HSU") at Fox Lake Correctional Institution about a very painful ulcer-like sore on the fourth toe of his left foot. ECF No. 1 at 3. A few days later, he was examined by medical staff. *Id.* Nursing staff informed Plaintiff that his toe looked infected, and they consulted with a nurse practitioner for the next steps because Godiwalla, Plaintiff's normal primary care provider, was unavailable at the time. *Id.* Plaintiff was prescribed Doxycycline, an antibiotic, and he completed the course of his medication. *Id.* Despite the medication, the sore on Plaintiff's toe had not improved and the pain had gotten worse. *Id.*

Plaintiff wrote to HSU again for treatment. *Id.* During the second examination, nursing staff agreed with Plaintiff that the sore was not healing. *Id.* Plaintiff was placed on a new antibiotic, Cephalexin, and was told that he would see Godiwalla within days to get her expert opinion for treatment. *Id.* On December 21, 2022, Plaintiff finally saw Godiwalla for treatment and he explained his toe issue. *Id.* Godiwalla told Plaintiff she believed the toe was infected. *Id.* Godiwalla stated that she would prescribe Cephalexin for the infection. *Id.* Plaintiff explained that he had already been prescribed Cephalexin and another antibiotic and that neither had provided him any relief. *Id.* Regardless of this information, Godiwalla insisted on prescribing Cephalexin again. *Id.* Plaintiff expressed his concern that his

situation was something more serious than an infection and requested to be sent offsite to a hospital for treatment. *Id.* at 4. Godiwalla disagreed with Plaintiff and said that offsite treatment was unnecessary. Godiwalla told Plaintiff she would be ordering an X-ray for his foot and that concluded his visit. *Id.*

Plaintiff had an X-ray of his foot taken the following week. *Id.* On January 12, 2023, Plaintiff met with Godiwalla again for a follow-up appointment. *Id.* Godiwalla explained that his X-ray did not show any signs of osteomyelitis and that she would be ordering an MRI for him. *Id.* Upon hearing this, Plaintiff explained to Godiwalla that he would be unable to undergo an MRI due to bullet fragments in his chest. *Id.* Godiwalla did not listen to Plaintiff and explained that it was her job to order the MRI. *Id.* Plaintiff repeatedly told Godiwalla that he could not have an MRI and that scheduling it was a waste of time. *Id.* Godiwalla became irritated with Plaintiff and told him that he needed to let her do her job. *Id.* Godiwalla explained that the MRI could still be done because the bullet fragments were in his chest and not close to his feet. *Id.* Plaintiff reiterated that it was not possible for him to have an MRI. Plaintiff maintains that, as a doctor, Godiwalla should have been aware that he would be unable to have an MRI because of the bullet fragments. *Id.*

While waiting for the MRI appointment, Plaintiff continued to experience excruciating pain. *Id.* at 5. On January 18, 2023, Plaintiff wrote to HSU again to complain about his toe pain that was getting worse. *Id.* Plaintiff expressed concern about losing his toe if he was not sent to a hospital soon. *Id.* On January 24, 2023, Plaintiff saw a nurse and told her that he could no longer tolerate the pain and wanted to be sent to a hospital immediately. *Id.* Instead, Plaintiff was told to be patient and to wait for his

MRI appointment. *Id.* On January 27, 2023, while in dialysis, Plaintiff continued to complain about his toe pain. *Id.* The nurse spoke to a nurse practitioner, who came to examine Plaintiff's toe. *Id.* The nurse practitioner told Plaintiff that she would prescribe tramadol for the pain to keep him comfortable until he could see Godiwalla again. *Id.*

Plaintiff continued to write to HSU about his pain for the next few weeks. Plaintiff was scheduled to see Godiwalla three different times after seeing the nurse practitioner. *Id.* However, Godiwalla cancelled all three appointments and refused to follow up with Plaintiff to reexamine his toe. *Id.* Nurse Sarah emailed Godiwalla about Plaintiff's issue and explained that Plaintiff's toe looked a lot worse and was turning black. *Id.* at 6. Godiwalla failed to respond to any emails. *Id.*

In the second week of February 2022, Plaintiff was taken to Waupon Memorial Hospital for an MRI. *Id.* Plaintiff was unable to get an MRI because of the bull fragments in his chest and he was returned to the prison without any information about a possible diagnosis. *Id.* Plaintiff was very angry because he knew this would happen and he needlessly waited two months for the MRI appointment. *Id.* Plaintiff's pain was unbearable, and he was crying every night. *Id.*

On February 20, 2023, Plaintiff saw Godiwalla walk into the dialysis area to speak with another patient. *Id.* She attempted to leave the area without making eye contact with Plaintiff. *Id.* Plaintiff hollered Godiwalla's name to get her attention and said that he needed to speak with her. *Id.* Plaintiff explained that Godiwalla was negligent in her care of Plaintiff's toe. Godiwalla finally agreed to send Plaintiff to the emergency room for treatment that day. *Id.*

The emergency room doctor explained to Plaintiff that Godiwalla wanted to do an X-ray of this foot and blood tests again and that he would be sent back to the institution if the tests yielded no results. *Id.* at 7. Plaintiff responded that these steps had already been taken and he asked for a CT scan or ultrasound to help with a diagnosis. *Id.* Plaintiff knew that Godiwalla intentionally requested identical tests to prevent Plaintiff from receiving a proper diagnosis. *Id.*

Upon returning from the emergency room, Godiwalla refused to see Plaintiff and refused to provide pain medication. *Id.* On February 17, 2023, Plaintiff wrote to the HSU manager to express his concern about Godiwalla's handling of his health care. On February 21, 2023, Plaintiff wrote to the warden's office to express his concern about Godiwalla and that he feared for his life. *Id.* The Warden responded only that he was forwarding the issue to HSU. *Id.*

On March 9, 2023, Plaintiff had a podiatry appointment that had previously been scheduled for other foot problems. *Id.* at 8. The podiatrist examined Plaintiff's foot and said it looked like Plaintiff had gangrene in his toe and that it was possible that his toe would be amputated. *Id.* The podiatrist said Plaintiff would have to be seen by a vascular doctor immediately. *Id.* Upon returning to the institution, Plaintiff was finally prescribed pain medication. *Id.* Godiwalla finally scheduled Plaintiff for a CT scan and ultrasound. *Id.* Plaintiff was also scheduled for an angiogram on April 13, 2023, to reopen blocked blood vessels. *Id.*

Although the circulation in Plaintiff's leg improved, it was too late to save Plaintiff's toe because the gangrene had caused too much damage. As a result, Plaintiff's toe was amputated. *Id.* On August 25, 2023, Plaintiff's four remaining toes on his left foot were amputated due to the gangrene.

*Id.* Plaintiff maintains that he would not have lost all five toes if Godiwalla had properly treated him earlier. *Id.*

**2.3****Analysis**

The Court finds that Plaintiff may proceed against Godiwalla on an Eighth Amendment deliberate indifference claim for her indifference to Plaintiff's serious medical need. The Eighth Amendment secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (internal quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640).

At the screening stage, the Court finds that Plaintiff's allegations are sufficient to proceed against Godiwalla. Plaintiff alleges that he lost five toes as a direct result of Godiwalla's failure to adequately treat him. As such, Plaintiff may proceed against Godiwalla on an Eighth Amendment

deliberate indifference claim for her indifference to Plaintiff's serious medical needs.

The Court will also allow Plaintiff to proceed against Godiwalla on a state law claim for negligence. At this early stage, the Court will exercise its supplemental jurisdiction under 28 U.S.C. § 1367(a). To sustain a claim for negligence, Plaintiff must allege "(1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001). As such, the Court will allow Plaintiff to proceed on a state law claim against Godiwalla for negligence.

### 3. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment claim against Godiwalla for her deliberate indifference to Plaintiff's serious medical needs.

**Claim Two:** State law negligence claim against Godiwalla for her failure to adequately treat Plaintiff's medical condition.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendant should take note that, within forty-five (45) days of service of this Order, she is to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendant **Godiwalla**;

**IT IS FURTHER ORDERED** that under the informal service agreement, Defendant shall file a responsive pleading to the complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendant raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendant contemplates a motion to dismiss, the parties must meet and confer before the motion is filed. Defendant should take care to explain the reasons why she intends to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss

should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendant files a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $298.51 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 18th day of September, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Page 10 of 11
Case 2:24-cv-00755-JPS   Filed 09/18/24   Page 10 of 11   Document 8

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.